# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| MICHELLE RADUANO, *individually and in her capacity as a Beneficiary of the Estate of Elaine Raduano;* and WILLIAM J. FLYNN, *in his capacity as Trustee of the Elaine Raduano Revocable Trust – 2018*, <br>     Plaintiffs, <br><br>     v. <br><br> MAR-CIA TESTA, *individually and in her capacity as Executrix of the Estate of Elaine Raduano,* <br>     Defendant. | No. 23-cv-101-JJM-PAS |

# MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

This action stems from a dispute among siblings concerning the assets of a trust created by the siblings' now-deceased mother.  The Court previously dismissed this case without prejudice.  *See* ECF No. 15.  Now pending before the Court is a motion by Plaintiff William J. Flynn, who serves as Trustee of the Trust, to reopen this proceeding and a motion to allow for amendment of the original complaint.[1]  *See* ECF Nos. 18, 19.  Defendant Mar-cia Testa, daughter of the decedent objects to both motions.  *See* ECF Nos. 23, 24.

---

[1] While Michelle Raduano, daughter of the decedent, was a named plaintiff in the original complaint, these motions are filed solely by Mr. Flynn on behalf of the Raduano Revocable Trust – 2018.

For the reasons that follow, the Court GRANTS Mr. Flynn's Motion to Reopen, as well as his Motion to Amend.  ECF Nos. 18, 19.

## I.    BACKGROUND

Michelle Raduano and Mar-cia Testa are the two surviving daughters of Elaine M. Raduano ("Elaine").[2]  ECF No. 18 at 3.  The facts of this case primarily revolve around two actions, taken either by Elaine or on Elaine's behalf, in the years leading up to her death.

The first action involves the opening of a Fidelity brokerage account ("the Fidelity Account"), which is alleged to have taken place on September 29, 2017.  ECF No. 18 at 3.  The Fidelity Account was opened in Elaine's name, and it designates Ms. Testa as a "joint account holder" with "rights of survivorship."  *Id.*

The second action involves the creation of the Elaine Raduano Revocable Trust – 2018 ("the Trust"), which was established on November 20, 2018, and amended on March 8, 2019.  *Id.*; *see also* ECF No. 18-1 at 37.  The Trust names Ms. Raduano as the Beneficiary and Mr. Flynn as the Trustee.  ECF No. 18 at 1, 4.

On May 5, 2020, Elaine passed away from complications of kidney cancer.  *Id.*; ECF No. 18-1 at 11.  On July 21, 2020, the Portsmouth Probate Court appointed Ms. Testa as the Executrix of Elaine's Estate ("the Estate").  ECF No. 18 at 2, 10.  Ms. Testa also took over the Fidelity Account via survivorship.  *Id.* at 2.  Ms. Testa

---

[2] To avoid confusion between Michelle Raduano and Elaine Raduano, the Court will refer to Elaine Raduano hereafter as "Elaine."

subsequently filed an inventory in the Portsmouth Probate Court. *Id.* Notably, the Fidelity Account was not inventoried as an asset of the Estate. *Id.*; ECF No. 18 at 6.

Believing that Ms. Testa had fraudulently obtained her right of survivorship and that the Fidelity Account should have been treated as an Estate asset, Ms. Raduano and Mr. Flynn enlisted in the services of Attorney Stephen A. Rodio. *See* ECF No. 1. On March 10, 2023, Mr. Rodio filed a lawsuit in this Court on their behalf, alleging a variety of common-law tort claims against Ms. Testa ("the 2023 Complaint"). *Id.*

Ms. Testa later moved to dismiss the 2023 Complaint. *See* ECF No. 7. Citing Ms. Raduano and Mr. Flynn's failure to pursue their statutory remedies under R.I. Gen. Laws § 33-18-17[3] before filing their common-law claims, the Court dismissed

---

[3] Section 33-18-17, which is referred to as an "[a]ction in name of estate prosecuted by interested person," provides:

> If an administrator, executor, or guardian shall be requested by any person legally interested in the estate of a deceased person, or person under guardianship, to commence an action or proceeding to recover any property, personal or real, which the legally interested person may have reason to believe should be recovered for the benefit of the estate, and if the administrator, executor, or guardian shall, for fifteen (15) days after written notice so to do, either personally delivered to himself or herself or his or her agent, or left at the last and usual place of abode of himself or herself or his or her agent, refuse, neglect or for any reason be incompetent, to commence the action or proceeding, the legally interested person may institute proceedings in the name of the estate of the deceased person, or person under guardianship, in the same manner and to the same extent as the administrator, executor, or guardian may do in the case of personal property, and in the case of real estate in the same manner as a guardian, devisee, or heir at law may do, to recover the property.

R.I. Gen. Laws § 33-18-17.

the 2023 Complaint without prejudice on July 24, 2023 ("the 2023 Order").  *See* ECF No. 15 at 5.  However, before doing so, the Court advised the parties that the Section 33-18-17 statutory claim could be pursued "in any court of competent jurisdiction," including in federal court.  *Id.* at 4 n.4.

Following the 2023 Order, Mr. Flynn reached out to his attorney, Joseph R. Marion, to have him re-engage the services of Mr. Rodio and request that he pursue another claim on behalf of the Trust under Section 33-18-17.  ECF No. 18 at 5; *see also* ECF No. 18-1 at 32-33 (displaying affidavit of Mr. Flynn).  Mr. Rodio confirmed his engagement in writing on April 25, 2024.  ECF No. 18 at 5; ECF No. 18-1 at 33.  However, despite multiple communications from Mr. Flynn, Mr. Rodio never pursued the statutory claim and provided no explanation for failing to do so.  ECF No. 18 at 5; *see also* ECF No. 18-1 at 33.

Meanwhile, Ms. Raduano contacted Mr. Flynn several times to inquire about the new claim against Ms. Testa.  ECF No. 18 at 5.  Over the ensuing years, however, Mr. Flynn would lose contact with Ms. Raduano for extended periods of time as she underwent multiple periods of incarceration and homelessness.  *Id.*; *see also* ECF No. 18-1 at 174-82 (displaying Ms. Raduano's criminal history).

In the Fall of 2024, having determined that Mr. Rodio had failed to act with the appropriate diligence in asserting the new claim on behalf of the Trust, Mr. Flynn decided it was time to find new counsel.  ECF No. 18 at 6.  This too proved challenging because the Trust had since become relatively insolvent, and Mr. Flynn could only afford to pay a new lawyer on a contingency fee basis.  *Id.*

Toward the end of 2024, Mr. Flynn retained the services of KSPR Law to represent the interests of the Trust. *Id.* On February 26, 2025, Mr. Flynn, through counsel and pursuant to Section 33-18-17, made a demand upon Ms. Testa to return the Fidelity Account to the Estate. *Id.*; *see also* ECF No. 18-1 at 184-85 (displaying statutory demand).

When there was no response to the demand, Mr. Flynn then filed a separate lawsuit in this Court against Ms. Testa on April 17, 2025 ("the 2025 Complaint"). ECF No. 18 at 6. My colleague Judge Melissa R. DuBose later dismissed the 2025 Complaint, finding that it had been untimely filed. *See Flynn v. Testa*, No. 25-cv-164-MRD-PAS, slip op. at 5 (D.R.I. Dec. 5, 2025).

Finally, on September 11, 2025, Mr. Flynn filed a Motion to Reopen this case. *See* ECF No. 18. He also filed a Motion to Amend the 2023 Complaint. *See* ECF No. 19. Ms. Testa objects to both motions. *See* ECF Nos. 23, 24; *see also* ECF No. 28.

## II.    MOTION TO REOPEN

### A.    Legal Standard

Rule 60(b) of the Federal Rules of Civil Procedure provides that, "[o]n motion and just terms," a district court is authorized to "relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). There are six enumerated grounds for granting such a motion, the first five of which

describe a particular basis for relief.[4]  *See Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 83 (1st Cir. 2010).

However, the last ground, Rule 60(b)(6), is a "catch-all provision"[5] that permits a court to grant relief for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "The decision to grant or deny such relief is inherently equitable in nature." *Ungar*, 599 F.3d at 83 (citing *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 25-26 & n. 10 (1st Cir. 2006); *Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co.*, 953 F.2d 17, 19-20 (1st Cir. 1992)).

The Supreme Court and the First Circuit have interpreted Rule 60(b)(6) to require a showing of "'exceptional circumstances' suggesting that the party is faultless in the delay.'" *Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*, 257 F.3d 58, 67 (1st Cir. 2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993)).  This requirement reflects the need to "balance the 'competing policies' of finality of judgments and resolving litigation on

---

[4] The first five grounds for granting such relief are as follows: (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; (3) "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party"; (4) "the judgment is void"; or (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(1)-(5).

[5] Because of Rule 60(b)(6)'s "catch-all quality," relief under this subsection "is only appropriate where subsections (1) through (5) do not apply." *United States v. Baus*, 834 F.2d 1114, 1121 (1st Cir. 1987).  Here, neither of the parties argue that any other subsection besides Rule 60(b)(6) applies.  Nor does the Court find that any of the other subsections apply to the facts of this case.

the merits." *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37, 43 (1st Cir. 2015).

In striking such a balance, factors to be considered by a court include: "(1) the motion's timeliness, (2) whether exceptional circumstances justify extraordinary relief, (3) whether the movant can show a potentially meritorious claim or defense, which, if proven, could bring her success at trial, and (4) the likelihood of unfair prejudice to the opposing party." *Id.* (citing *Teamsters*, 953 F.2d at 20). It is important to note that "[t]his compendium is neither exclusive nor rigidly applied. Rather, the listed factors are incorporated into a holistic appraisal of the circumstances." *Ungar*, 599 F.3d at 83-84. "[T]here is no ironclad rule requiring an in-depth, multi-factored analysis in every case. Sometimes one factor predominates to such an extent that it inexorably dictates the result." *Id.* at 86 (citing *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 28-29 (1st Cir. 2006); *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 5 (1st Cir. 2001)).

## B.    Analysis

In addressing Mr. Flynn's Motion to Reopen, the Court will analyze each of the Rule 60(b)(6) factors in turn. *See Bouret-Echevarria*, 784 F.3d at 43.

### 1.    Timeliness of Mr. Flynn's Motion

The first factor looks to whether the movant has filed their motion to reopen in a timely manner. There is no specific time period that governs when a Rule 60(b)(6)

motion must be made, except that it must be filed within a "reasonable time."[6] *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660 (1st Cir. 1990). "What constitutes reasonable time, however, depends on the facts of each case." *Id.* at 660-61 (citing *United States v. Berenguer*, 821 F.2d 19, 21 (1st Cir. 1987); *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985)). For instance, the First Circuit has held that a Rule 60(b)(6) motion to reopen filed thirty days after judgment is within the "reasonable time" period. *Id.* at 660 (citing *Limerick v. Greenwald*, 749 F.2d 97, 99 (1st Cir. 1984)). At the same time, the First Circuit has found a five-year delay in filing to be within a "reasonable time." *See United States v. Baus*, 834 F.2d 1114, 1122-23 (1st Cir. 1987).

With regard to timeliness, other "relevant considerations include, whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner." *Boch*, 909 F.2d at 661 (citing *In re Pac. Far E. Lines Inc.*, 889 F.2d 242, 249 (9th Cir. 1989)).

In this case, more than two years have passed between the Court's dismissal of the 2023 Complaint and Mr. Flynn's filing of the Motion to Reopen. During that time, as described in his affidavit, Mr. Flynn has actively pursued his Section 33-18-17 action. First, Mr. Flynn reached out to his attorney, Mr. Marion, about re-engaging the litigation services of Mr. Rodio. Mr. Rodio confirmed this engagement in writing. Mr. Flynn then attempted to communicate with Mr. Rodio multiple times

---

[6] By contrast, motions brought under Rule 60(b)(1), (2), and (3) must be brought within one year from the judgment. *See* Fed. R. Civ. P. 60(c)(1); *United States v. Marin*, 720 F.2d 229, 231 (1st Cir. 1983).

about the claim but was left with no response. Mr. Flynn then sought a *second* attorney to litigate the claim. KSPR Law agreed to take on the matter but, in accordance with Section 33-18-17's requirements, Mr. Flynn had to first make a statutory demand upon Ms. Testa—which he made. Left with no response to the demand, Mr. Flynn filed a *second* complaint with this Court, which Judge DuBose dismissed as untimely filed. Finally, after all that, Mr. Flynn filed the present Motion to Reopen.

Given these facts, there are good reasons to see why Mr. Flynn did not file this motion sooner. It cannot fairly be said that Mr. Flynn has "sat on his hands" for the past two years, as Ms. Testa suggests. ECF No. 23 at 7. Rather, he has acted diligently and consistently in his efforts to pursue a claim on behalf of the Trust he is charged with overseeing. As such, the Court finds that Mr. Flynn's motion was filed within a reasonable time.

### 2.    Exceptional Circumstances

The second factor looks to whether the case presents "exceptional circumstances" justifying the "extraordinary relief" sought. In assessing this factor, the Court must look to, among other things, whether the movant "is faultless in the delay" in seeking relief. *Blanchard v. Cortes-Molina*, 453 F.3d 40, 44 (1st Cir. 2006) (quoting *Pioneer*, 507 U.S. at 393). "If a party is 'partly to blame,' Rule 60(b)(6) relief is not available to that party." *Id.* (quoting *Claremont Flock Corp. v. Alm*, 281 F.3d 297, 299 (1st Cir. 2002)); *see also Cotto v. United States*, 993 F.2d 274, 278 (1st Cir.

9

1993) ("In our adversary system of justice, each litigant remains under an abiding duty to take the legal steps necessary to protect his or her own interests.").

Once again, the facts of this case present compelling reasons to find in Mr. Flynn's favor. First, Mr. Flynn raises serious allegations against Ms. Testa involving the forgery of her mother's signature on a banking application in order to obtain ownership of a brokerage account. In cases involving similar facts, courts have granted relief from judgment under Rule 60(b)(6). *See, e.g., United States v. Courageux*, No. 13-80391-CIV, 2014 WL 197729, at *1-2 (S.D. Fla. Jan. 9, 2014) (granting defendant's motion to reopen under Rule 60(b)(6) due to concerns about whether defendant's signature on a student loan promissory note was forged); *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 266-67 (4th Cir. 1993) (reversing lower court's denial of Rule 60(b)(6) motion brought by administratrix of decedent's estate in loan default action due in part to concerns about whether the decedent "sign[ed] the loan documents or authorize[d] someone to sign on his behalf").

Other courts have suggested that serious concerns of forgery can rise to the level of "extraordinary circumstances" under Rule 60(b)(6), but they have nevertheless denied the motions to reopen due to inadequate evidence being presented or mitigating facts in the record that lessen those concerns. *See, e.g., In re Residential Capital, LLC*, No. 15 Civ. 3248 (KPF), 2016 WL 796860, at *16 (S.D.N.Y. Feb. 22, 2016) (denying motion to reopen due to "inadequate evidence of fraud or forgery"); *Akins v. U.S. Bank, Nat'l Ass'n*, No. 2:18-cv-02725-SHM-dkv, 2019 WL

6878877, at *4 (W.D. Tenn. Dec. 17, 2019) ("Although [plaintiff's] concerns about forgery are colorable, mitigating facts in the record greatly lessen those concerns.").

As will be explained later in this opinion, Mr. Flynn has made a strong case as to the potential merits of his forgery claim. At this stage, the Court is persuaded that he will present adequate evidence and that there are no mitigating facts in the record that lessen the Court's concerns over the alleged forgery in this case. Ms. Testa suggests that, according to First Circuit precedent, "garden variety deceit and fraud by a party" does not by itself rise to the level of a Rule 60(b)(6) claim. ECF No. 26 at 16; ECF No. 28 at 2, 5; *see Simon v. Navon*, 116 F.3d 1, 5 (1st Cir. 1997).

However, the Court's concern over allegations of forgery is not the only consideration weighing in favor of finding "exceptional circumstances" in this case. A second and perhaps more important consideration is that Mr. Flynn is not to blame for the delay in bringing this Motion to Reopen. *See Blanchard*, 453 F.3d at 44. In fact, he has made every effort to pursue the Section 33-18-17 claim, despite being presented with a variety of challenges, including: (1) a wholly uncommunicative and inattentive attorney, who Mr. Flynn had initially hired to litigate the claim but who failed to attend to it; (2) a hard-to-reach beneficiary in Ms. Raduano, who has experienced multiple periods of incarceration and homelessness in the past two years; and (3) a trust on the verge of insolvency, which made it incredibly difficult to find new counsel to take on this matter.

It also bears emphasizing that Mr. Flynn has undertaken these efforts, not for his own benefit, but to protect the interests of the Trust and Ms. Raduano as its

Beneficiary.[7]  Notwithstanding the difficulties encountered, Mr. Flynn continues to faithfully discharge his fiduciary duties as Trustee—conduct that is not only commendable but also exceptional.  In light of these circumstances, the second factor weighs in favor of Mr. Flynn.

### 3.    Potential Merits of Mr. Flynn's Claim

The third factor looks to the potential merits of the movant's underlying claim. "[A]s a precondition to relief under Rule 60(b), [a party] must give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Bouret-Echevarria*, 784 F.3d at 46 (quoting *Teamsters*, 953 F.2d at 20).  Indeed, "motions for relief under Rule 60(b) are not to be granted unless the movant can demonstrate a meritorious claim or defense." *Id.* (internal citations omitted) (quoting *Teamsters*, 953 F.2d at 20).  This is so because the rule recognizes not only the "importance of finality" but also "the desirability of resolving disputes on the merits." *Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F.3d 62, 66 (1st Cir. 2003) (citing *Teamsters*, 953 F.2d at 19).

---

[7] In a supplemental briefing recently submitted to the Court, Ms. Testa appears to suggest, for the first time, that "Mr. Flynn is prosecuting the instant case for his own financial reasons." ECF No. 28 at 6. It is of course hornbook law that a trustee must put the interests of the trust and the beneficiary ahead of their own personal interests. *See generally* Bogert, *The Law of Trusts and Trustees* § 543 (2d ed. 1960)). Under Rhode Island law, trustees are also bound by a fiduciary duty not to abuse their discretion, and they must act reasonably within the limits of their power. *See Viall v. R.I. Hosp. Trust Co.*, 123 A. 570, 571-72 (R.I. 1924). A court will not substitute its judgment for that of the trustee unless it determines, under the circumstances, that the trustee's exercise of their discretion is unreasonable. *Id.* at 572. Here, the evidence before the Court shows that Mr. Flynn's conduct as Trustee has been beyond reproach, and there is no indication that, in representing the interests of the Trust, he has acted unreasonably in the exercise of his discretion.

This Court has yet to address the merits of Mr. Flynn's Section 33-18-17 claim.[8] The claim was not part of the 2023 Complaint, and in its 2023 Order, the Court suggested that the claim could be pursued "in any court of competent jurisdiction," including this one.  ECF No. 15 at 4 n.4.  The Court also held that Mr. Flynn, as Trustee, likely had standing to bring the Section 33-18-17 claim in the name of Elaine's Estate as a "legally interested person" attempting to recover property that he "believe[s] should be recovered for the benefit of the estate."  *Id.* at 3 (quoting R.I. Gen. Laws § 33-18-17); *see also Henry v. Sheffield*, 856 F. Supp. 2d 345, 350 (D.R.I. 2012).

### i.    Ms. Testa's Futility Argument

As a preliminary matter, Ms. Testa argues that reaching the merits of Mr. Flynn's Section 33-18-17 claim would be an "empty exercise" because it is time-barred by another state statute, R.I. Gen. Laws § 9-1-21.  ECF No. 23 at 9-10.  Section 9-1-21 provides:

> If any person, for or against whom any causes of action enumerated in this chapter accrue, dies before the time limited for bringing action, or within sixty (60) days after the expiration of that time, and the cause of action survives, the action may be commenced by or against the executor or administrator of the deceased person, as the case may be, at any time not more than one year after the appointment of the executor or administrator of the person so dying, and not afterwards, if barred by the provisions of this chapter; provided, however, that any such action shall be brought within three (3) years after the death of the person and not after.

---

[8] While Mr. Flynn included the Section 33-18-17 claim in his 2025 Complaint, Judge DuBose dismissed that complaint without reaching the merits.  *Flynn*, slip op. at 2-5.

R.I. Gen. Laws § 9-1-21.  Ms. Testa claims that, because she was appointed Executrix of Elaine's Estate on July 21, 2020, any suit filed against her in the name of the Estate should have been brought within one year of that appointment, that is, July 21, 2021. ECF No. 23 at 10.  As a reminder, Mr. Flynn filed the 2023 Complaint—which he now seeks to amend—on March 10, 2023.  *See* ECF No. 1.

Thus, before reaching the potential merits of Mr. Flynn's claim, the Court must first address Ms. Testa's futility argument.  Fortunately, the Rhode Island courts have provided robust analysis on this issue.  *See, e.g.*, *Prior v. Roger Williams Gen. Hosp.*, No. 75-2778, 1976 WL 177108 (R.I. Super. Ct. Apr. 13, 1976).  As the *Prior* court observed, the Rhode Island Supreme Court has made clear that Section 9-1-21 "applies only in those actions which accrue before the death of the decedent or within sixty (60) days thereafter *but which may become barred by the general statute of limitations within one year from the death of the decedent.*"  *Id.* at 1 (emphasis in original) (citing *MacNeill v. Gallagher*, 53 A. 630 (R.I. 1902); *Borges v. Cory*, 82 A.2d 833 (R.I. 1951)).  "If the action would not be barred by the general statute of limitations within one year from the death of the decedent, the statute does not apply."  *Id.* Section 9-1-21 "is a special statute which *enlarges* the time for bringing suit whenever the limitations period provided for in the general statute has run out during the one-year period following the death of the person for whom the cause of action has accrued."  *Id.* (emphasis in original).  "It is not meant to cut down the general statute of limitations period for actions which have survived the decedent."  *Id.*

After *Prior* was decided, the Rhode Island General Assembly amended Section 9-1-21 in 1984.[9]  R.I. Gen. Laws 1956 § 9-1-21, *amended by*, Pub. L. 1984, ch. 410, § 1.  However, as this Court recognized in 2013, "the first portion of the statute remains essentially the same, except that the triggering event for the running of the one-year limitations period was changed from the death of the decedent to the appointment of the executor or administrator."  *TD Bank, N.A. v. Cambio*, No. 12-647 S, 2013 WL 4679210, at *5 (D.R.I. Aug. 29, 2013), *adopting report and recommendation*, No. 12-647 S (Mar. 26, 2013).  As such, "the pre-1984 Rhode Island State cases interpreting the statute's reach are still good law."  *Id.*

Applying the caselaw to the facts of this case helps the Court to discern whether or not Section 9-1-21 bars Mr. Flynn's claim.  We begin with the first part of the statute, which asks whether the decedent died "before the time limited for bringing action, or within sixty (60) days after the expiration of [that] time."  R.I. Gen. Laws § 9-1-21.  Here, the fraud giving rise to this cause of action is alleged to have occurred—and thus, accrued—on September 29, 2017.  ECF No. 18 at 3.  Generally, the statute of limitations for bringing a fraud claim in Rhode Island is ten years.  *See* R.I. Gen. Laws § 9-1-13(a) ("Except as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after."); *see also Behroozi v. Kirshenbaum*, 128 A.3d 869, 873 (R.I. 2016) (recognizing Rhode Island's "ten-year statute of limitations for fraud").  Before she

---

[9] The Rhode Island General Assembly also amended Section 9-1-21 in 1997. *See* R.I. Gen. Laws 1956 § 9-1-21, *amended by*, Pub. L. 1997, ch. 326, § 14.  However, for the purposes of this case, that amendment does not change the Court's analysis.

died in 2020, Elaine was free to bring a fraud claim in her own right because she was well within the ten-year statute of limitations at that point.  Accordingly, at the time of her death, Elaine was not limited in bringing her fraud action.

The next part of the statute asks whether, even after the decedent's death, "the cause of action survives."  R.I. Gen. Laws § 9-1-21.  Under Rhode Island law, fraud claims survive the death of the individual upon whom the fraud was perpetrated.[10]  *See* R.I. Gen. Laws § 9-1-6(3) (providing that "[c]auses of action and actions for damages to … personal estate" survive the death of the plaintiff); *see also Chu v. Legion of Christ, Inc.*, 2 F. Supp. 3d 160, 171-72 (D.R.I. 2014) (recognizing that, under Rhode Island law, it is well settled that fraud claims survive the plaintiff's death).

Ms. Testa reads the following statutory provision quite narrowly: "the action may be commenced … against the executor … of the deceased person, as the case may be, at any time not more than one year after the appointment of the executor … of the person so dying, and not afterwards."  R.I. Gen. Laws § 9-1-21.  She argues that this provision forecloses Mr. Flynn's action against her, which was filed more than one year after her appointment as Executrix.  ECF No. 23 at 10.  Read in isolation, Ms. Testa may have a point.

However, the Court cannot ignore an important qualifier that immediately follows that section: "if barred by the provisions of this chapter."  R.I. Gen. Laws § 9-

---

[10] By contrast, defamation claims, for example, do not survive the death of the person who is defamed.  *See Nissensohn v. CharterCARE Home Health Servs.*, 306 A.3d 1026, 1035 (R.I. 2024) (citing *Young v. Aylesworth*, 86 A. 555, 556-57 (R.I. 1913)).

1-21. "[T]his chapter" refers to Title 9, Chapter 9-1 of the General Laws of Rhode Island, which concerns "Causes of Action." As the court explained in *Prior*, this clause cannot be disregarded: it indeed helps clarify that Section 9-1-21 "applies only to those actions brought within one year of the death of the decedent which are 'barred by the [limitation] provisions of this chapter.'" 1976 WL 177108, at *1. "Actions not so barred *are not affected* by this section." *Id.* (emphasis added).

As relevant here, the already mentioned ten-year statute of limitations does not bar this fraud action. Because the fraud is alleged to have occurred in 2017, absent her death in 2020, Elaine would have had until September 29, 2027 to bring a fraud claim. ECF No. 26 at 5-6. Otherwise, there is no alternative provision within Chapter 9-1 that precludes this fraud action. It therefore stands to reason that Mr. Flynn's claim is not affected by Section 9-1-21, meaning his claim is not futile.

### ii.    Whether Mr. Flynn's Claim Is "Potentially Meritorious"

The Court now turns to the potential merits of Mr. Flynn's fraud claim. *See Bouret-Echevarria*, 784 F.3d at 46. On the record before it, Mr. Flynn appears to cross this threshold. In his affidavit, Mr. Flynn states with particularity the circumstances surrounding the underlying fraud claim, namely that Ms. Testa allegedly forged her mother's signature to obtain her right of survivorship over the Fidelity Account. ECF No. 18-1 at 30-32. He also claims to possess evidence to support his allegations of fraud, including a copy of a "Brokerage Account Application" from Fidelity and "dozens of documents containing genuine signatures made by Elaine, many of which are notarized, and some of which were also witnessed

17

and signed by [Mr. Flynn] and are dated around the same time the Fidelity Account was opened." *Id.* at 30. Accordingly, the third factor also weighs in Mr. Flynn's favor.

### 4. Likelihood of Unfair Prejudice to Ms. Testa

The fourth and final factor looks to any prejudice against Ms. Testa that would result from the Court granting Mr. Flynn's Motion to Reopen. Important considerations include whether "witnesses have died, memories have dimmed beyond refreshment, some discovery scheme has been thwarted or evidence has been lost." *United States v. Singer*, 2024 WL 1702128, at *16 (D. Mass. Apr. 19, 2024) (cleaned up) (citing *Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989)).

Here, any prejudice against Ms. Testa is minimal. To be sure, before she died, Elaine was arguably the best person to testify as to the alleged fraud in this case. However, this point does not change the Court's analysis one way or the other because Elaine had already passed when this lawsuit was first filed in 2023. To the extent Ms. Testa argues that memories may have faded or evidence may have been lost, the Court is unpersuaded. The same point can be made about any case, and there is nothing in the record to show that any evidence that would be presented at trial has become unavailable.

Accordingly, because Ms. Testa has not shown that she will be prejudiced by the decision to reopen this case, this factor also weighs in Mr. Flynn's favor.

### 5. Summary of Analysis

Having determined that each of the Rule 60(b)(6) factors weigh in Mr. Flynn's favor, *see Bouret-Echevarria*, 784 F.3d at 43, the Court GRANTS the Motion to

Reopen (ECF No. 18) and sets aside its prior order, dismissing this case without prejudice (ECF No. 15). The Court will now proceed to the other pending motion before it, which is Mr. Flynn's Motion to Amend the 2023 Complaint (ECF No. 19).

## III.    MOTION TO AMEND

### A.    Legal Standard

The Supreme Court has explained that a Rule 60(b) motion and a Rule 15(a) motion "demand separate inquiries." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025). A court must first address the Motion to Reopen *before* it can address the Motion to Amend. *Id.* ("[S]atisfaction of Rule 60(b)(6) necessarily precedes any application of Rule 15(a)."). Once the judgment relating to the Motion to Reopen is set aside, then the court may proceed with its Rule 15(a) analysis. *Id.* (citing *Boyd v. Sec'y, Dep't of Corr.*, 114 F.4th 1232, 1237 (11th Cir. 2024)).

Where a plaintiff seeks leave to amend their complaint, Rule 15(a)(2) of the Federal Rules of Civil Procedure governs. *See* Fed. R. Civ. P. 15(a)(2). There is generally a liberal policy in favor of granting a party leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."); *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 46 (1st Cir. 2014) ("A Rule 15(a) motion to amend pleadings is ordinarily granted freely."). "That rule notwithstanding, '[a] court may deny leave to amend for a variety of reasons, including futility, bad faith, undue delay, or a dilatory motive on the movant's part.'" *Am. Bd. of Internal Med. v. Salas Rushford*,

114 F.4th 42, 66 (1st Cir. 2024) (internal quotations omitted) (quoting *Privitera v. Curran (In re Curran)*, 855 F.3d 19, 27-28 (1st Cir. 2017)).

Relatedly, Rule 15(c) permits the "relation back" of an amendment to an earlier filed complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In other words, "when an amended pleading 'relates back' to the date of a timely filed original pleading [it] is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).

## B.    Analysis

Mr. Flynn seeks leave to amend the 2023 Complaint and relate back his proposed amended complaint to the original filing so that he can pursue the statutory remedy provided under R.I. Gen. Laws § 33-18-17. ECF No. 19 at 2. Ms. Testa objects, arguing that the motion would be futile, that Mr. Flynn's lengthy delay in bringing this motion was undue, and that granting the motion would result in prejudice to her. ECF No. 24 at 8-12.

The Court has already analyzed each of these arguments in ruling on Mr. Flynn's Motion to Reopen. To summarize: (1) the Motion to Amend is not futile because Mr. Flynn's fraud claim is not affected by Section 9-1-21; (2) the filing of this motion was not attributed to undue delay because Mr. Flynn has acted diligently and consistently in his efforts to pursue this claim over the past two years; and (3) Ms.

Flynn has not shown that she will be prejudiced because there is nothing in the record to show that any evidence that would be presented at trial has become unavailable.

To the extent that Ms. Testa argues that the forgery claim is being asserted against her for the first time in Mr. Flynn's proposed amended complaint, the Court disagrees. Since this lawsuit was first filed in 2023, Mr. Flynn has consistently maintained that Ms. Testa's right of survivorship over the Fidelity Account was obtained through forgery. The Court need look no further than the allegations of forgery contained in the 2023 Complaint itself:

18. Upon information and belief, in an effort to deny her sister Michelle the funds in the investment account, Marcia *forged* her mother's signature on the Fidelity Account opening documents, and checked the box indicating the Fidelity Account would be a joint account with rights of survivorship.

* * *

23. Upon information and belief, and as made clear in her estate planning documents, Elaine was wholly unaware that Marcia had opened the Fidelity account by *forging* her mother's name on the Fidelity documents, and was wholly unaware that Marcia had designated the Fidelity Account as offering Marcia "rights of survivorship."

ECF No. 1 at 3 (emphasis added).

The Court therefore GRANTS Mr. Flynn's Motion to Amend the 2023 Complaint. ECF No. 19. Because Mr. Flynn's proposed Amended Complaint unquestionably arises out of the same conduct, transaction, or occurrence set out in the original complaint, the Amended Complaint shall also relate back to the 2023 Complaint. *Id.*

## IV.    CONCLUSION

For the reasons stated, the Court GRANTS Mr. Flynn's Motion to Reopen. ECF No. 18.   The Court also GRANTS Mr. Flynn's Motion to Amend his 2023 Complaint.  ECF No. 19.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Judge

February 27, 2026